IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


United States of America,

        Plaintiff,


      vs.                         Case No. 13-10089-JTM


Charles Ray Matthews,

        Defendant.



MEMORANDUM AND ORDER


    The defendant Charles Ray Matthews is charged with distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). Matthews has filed a motion in limine (Dkt. 14), in which he seeks exclusion under Fed.R.Evid. 609 of any reference to his Louisiana conviction in 1992 or 1993 for indecent behavior with a juvenile. He has also moved (Dkt. 15) to suppress statements he made to officers when they executed a search warrant at his home.

    The court heard evidence and arguments relating to the defendant's motions, and announced its determination that the motion in limine should be denied as moot given the government's representation that it would not seek to introduce evidence of Matthews' prior convictions in its case in chief. In its Response, the government observes that prior

instances of child molestation may be admissible under Fed.R.Evid. 414, but states that it does not intend to introduce evidence of the Louisiana conviction, or for that matter, two additional incidents in 1996 and in 2008. The government states that such evidence may be offered in rebuttal. If this need arises, the government shall notify the court of its intention prior to the introduction of the evidence.

Matthews' home in Belleville, Kansas was searched pursuant to warrant on February 22, 2011. During the search, Matthews acknowledged to the officers executing the warrant that he had used a particular Yahoo chatroom name, "ray_matthews2002," and that he had shared child pornography with other chatroom users. His suppression motion argues that the his comments cannot be used as evidence because the officers failed to give *Miranda* warnings.

The parties are not in disagreement as to the basic necessity of *Miranda* warnings in the event of custodial interrogation. A custodial interrogation arises if, in light of the totality of the circumstances, the defendant was then under formal arrest or restrained to "'the degree associated with a formal arrest.'" *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*) (quoting *United States v. Mathiason*, 429 U.S. 492, 495 (1977)). The inquiry is objective rather than subjective in nature. *Stansbury v. California*, 511 U.S. 318, 323-24 (1994).

In his motion, Matthews points to two elements supporting suppression. First, he notes the number of agents who were present when the warrant was served. (Dkt. 15, at 1). Second, he cites *United States v. Erekson*, 70 F.3d 1153, 1156-57 (10th Cir. 1995), where the Tenth Circuit held that a defendant who voluntarily went to an IRS office for an interview

was not in custody for purposes of *Miranda*, noting in part that the defendant "not the 'focus' of the interview." Matthews argues that, in contrast, he was indeed the focus of the child pornography investigation, so the interview should be deemed coercive.

The defendant's argument misconstrues *Erekson*. In that case, the Tenth Circuit contrasted the facts in that case (an interview at the IRS office) with the facts in *Beckwith v. United States*, 425 U.S. 341 (1976), where the Supreme Court held that an IRS interview *in the defendant's home* was non-custodial, even though the agents alerted the defendant that he was a focus of their inquiry. The *Erekson* court was not announcing some automatic rule that any interview with a focus of investigation is automatically custodial. Such a rule would be inconsistent both with the Supreme Court's decision in *Beckwith* and (as discussed below) with other rulings specifically addressing interviews conducted during the execution of search warrants. In all cases, the court must examine the totality of the circumstances. In *Erekson*, the court simply stressed the fact that the defendant was not the focus of the investigation as a counterbalance to the fact the interview was conducted not in the home, but at an IRS office.

A detention during the execution of a search warrant is "substantially less intrusive than an arrest." *Michigan v. Summers*, 452 U.S. 692, 702 (1981). Accordingly, courts have generally held that for *Miranda* purposes, a custodial environment is *not* created simply because it occurs while a search warrant is executed. *See, e.g., United States v. Barry*, 479 Fed.Appx. 297, 299 (11th Cir. 2012) (defendant "interviewed calmly in a private area," the questioning was brief, and defendant was not "threatened or physically detained"); *United*

*States v. Axsom*, 289 F.3d 496, 500–03 (8th Cir. 2002) (questioning was voluntary, defendant's freedom of movement was not restrained, only two agents conducted the questioning, there was no evidence of deceptive tactics, and defendant was not placed under arrest at the end of the questioning); *United States v. Burns*, 37 F.3d 276, 281 (7th Cir. 1994) ("in the usual case" during the execution of a search warrant, "*Miranda* warnings are not required").

The Tenth Circuit reached this conclusion in *United States v. Bennett*, 329 F.3d 769, 774-775 (10th Cir. 2003), holding that the defendant not in custody for purposes of *Miranda* where officers executing a search warrant told defendant he was not under arrest and did not employ any additional coercive tactics. In reaching this conclusion, the court contrasted *United States v Perdue*, 8 F.3d, 1455, 1463 (10th Cir. 1993) where the court found the interaction custodial in nature, since the questioning occurred at gunpoint, while the defendant was lying face-down on the ground.

Courts in this District have reached similar conclusions. *See United States v. Shaffer*, 364 F.Supp.2d 1238 (D.Kan. 2005) (Robinson, J.) (*Miranda* not required during search warrant execution, where officers told defendant he was free to leave and employed no coercive tactics); *United States v. Logan*, 241 F.Supp.2d 1164, 1182 (D.Kan. 2002) (Crow, J.) (same result, finding "[n]othing prevented Logan from leaving the house while officers executed the search warrant").

Of course, in a given case there may be additional facts which transform an interview during a search warrant into a custodial interrogation. Thus, in *United States v.*

4

*Craighead*, 593 Fed.3d 1073 (9th Cir. 2008), the court found that the defendant was in custody for *Miranda* purposes. Even though the defendant in *Craighead* was told he was free to leave, the court found other facts outweighed this: the defendant had been physically segregated by being taken to an unfurnished storage room, and made to sit on a box. "In front of the door stood an armed detective wearing a raid vest. Beyond the door were six more officers searching his house. Craighead testified that he did not want to leave his house entirely, because he did not want to leave the officers alone with his belongings and did not want to leave his dog unattended." *Id.* The court stressed the isolating nature of the storage room — "An interview conducted in a suspect's kitchen, living room, or bedroom might allow the suspect to take comfort in the familiar surroundings of the home and decrease the sensation of being isolated in a police-dominated atmosphere." *Id.*

The Ninth Circuit later stressed that *Craighead* rested on its own facts. In *United States v. Dierking*, 359 Fed.Appx. 823 (9th Cir. 2009), the court reversed the district court's ruling which, relying on *Craighead*, suppressed statements made by the defendant while a search warrant was executed. The Ninth Circuit stressed that the interview occurred at the defendant's kitchen table, he was not blocked from leaving, and was told that he was free to leave.

Turning to the present case, the only specific fact cited by Matthews is that "numerous armed officers" executed the warrant. (Dkt. 15, at 1). The hearing testimony of FBI Special Task Force Agent Angie Jones established that six law enforcement officers were present during the search of Matthews's home. This is not an unusual number of

officers for the execution of a search warrant. Typically the FBI employs five to seven FBI agents and two local officers when executing a warrant. In the present case, because of the rural environment of the search, the warrant was executed by three FBI agents with three local officers in support.

Two officers interviewed Matthews. Both were in plain clothes. At the time of the first announcement of the warrant, the officers wore marked bulletproof vests and held their firearms at "low ready" (drawn, but pointed at the ground). Matthews and another person were escorted onto the front porch of the house. As soon as the house was clear, the vests were removed and the firearms were holstered.

Agent Jones and FBI Task Force Agent Mike Daniels told Matthews he was not under arrest and was free to leave at any time. The agents used no promises or threats. Matthews was not handcuffed. Matthews in fact *did* leave the residence while the warrant was still being executed.

Before he departed, Matthews told the officers of his criminal history. He admitted he had received child pornography from someone else. He placed the child pornography in his computer's trashed, but later retrieved it, and had posted it in chat sessions. Matthews told the officers his chat identification.

After Matthews had left, Agent Jones realized that she had gotten formal permission by Matthews to access his account. She left a form at the house which would permit such access, consenting to the officers' use of the "ray_matthews2002" name for further investigations. That form included language stating:

I give this consent freely and voluntarily, without fear, threats, coercion, or promises of any kind. I have been advised of my right to refuse to allow the assumption of my online presence, and I hereby voluntarily waive this right.

Matthews signed and returned the form the next day.

As noted at the conclusion of the hearing, the motion to suppress is denied. The facts establish that the warrant was executed in a standard fashion. There are no additional elements pointing towards an atmosphere of coercion. The defendant was told he could leave at any time and in fact did so. At the time of the interview, the body armor was removed and no guns were displayed. The search here is thus essentially typical of search warrant executions, which, as noted earlier, are generally deemed non-custodial in nature.

IT IS ACCORDINGLY ORDERED this 19th day of November, 2013, that the defendant's Motion in Limine and Motion to Suppress (Dkt. 14, 15) are hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE